The Honorable David Choate State Representative 709 North Main Street Beebe, Arkansas 72012-3048
Dear Representative Choate:
This is in response to your request for an opinion on the distribution of "Second-Tier Equalization" funds to local school districts. Specifically, you state that in 1993-94 and 1994-95, the Arkansas Department of Education ("Department") increased school aid for "growing school districts" in accordance with the School Finance Act, pursuant, in part, to A.C.A. § 6-20-302(1) (Supp. 1995). You note that in addition to Minimum Foundation Program Aid ("MFPA") and Educational Excellence Trust Fund moneys, "growing school districts" receive "Second-Tier Equalization" funds under A.C.A. § 6-20-314 (Supp. 1995). I assume this is true as long as they qualify for such funds under A.C.A. § 6-20-314. You also note that since the passage of the School Finance Act, the "Second Tier Equalization" funds were "routinely added" after the Department of Education received the first quarter attendance data from the districts. That is, the aid calculation for these funds was based upon, and included, attendance information from the first quarter of the current school year, rather than merely upon previous year attendance. You also note, however, that starting in December of 1995 the "printouts" received by the school districts from the Department departed from this previous practice, and did not "adjust" aid for "Second-Tier Equalization" funding after first quarter enrollment data was received. Presumably, the printouts were based upon "previous year" enrollment data alone. You note that this action affected thirty-three school district in the state who relied on the Department's previous practice regarding "Second-Tier" funding for planning purposes. Your have therefore asked by opinion on the following questions:
 Did the Arkansas Department of Education comply with the School Finance Act when it removed `Second-Tier' funds from the December 1995 increases for growing school districts? If so, what was the legal justification for the change?
It is my opinion that the resolution of these questions will ultimately require resort to the courts. The issues you pose present some very close questions of statutory interpretation, and may additionally require an analysis of the facts concerning aid distributions to particular school districts. I have set out below, however, the relevant statutory provisions and an analysis of the application of these provisions to your questions.
Section 6-20-314 (Supp. 1995) of the Arkansas Code governs "Second-Tier Equalization" funds. It provides in pertinent part as follows:
 (a)(1) Notwithstanding other provisions of this subchapter, an amount not to exceed five percent (5%) of any increased funds available in the 1993-94 school year, and for each year thereafter, over the preceding year for Minimum Foundation Program Aid allocation shall be set aside from the total funds available for distribution under the provisions of this subchapter for funding a second tier of equalization.
* * *
 (b) To determine the qualifying districts for this funding, the school districts in the state shall be arranged in descending order by school districts according to the local resource rate per weighted average daily membership, as defined in § 6-20-302. In order to be eligible for second-tier funding, school districts must have voted a millage the previous year at least equal to the millage charge for the year in which the aid is distributed.
 (c) Beginning with the bottommost school district, the amount of aid available shall be added to each district's local resource rate per weighted average daily membership in such manner that all districts participating will have the same amount per weighted average daily membership, including the second-tier funds and the local resource rate. [Emphasis added.]
The relevant language above, for purposes of your question, is the reference to ranking the school districts by "local resource rate per weighted average daily membership, as defined in § 6-30-302." The Department uses the "local resource rate per weighted average daily membership" to rank the districts, and it is this ranking upon which the distribution of second-tier equalization funding is distributed. The definition of "local resource rate per weighted average daily membership is found at A.C.A. § 6-20-302(9) (Supp. 1995), and states as follows:
 `Local resource rate per weighted average daily membership' means each school district's total local resources divided by the district's weighted average daily membership of the previous year. [Emphasis added.]
Thus, the definition of "local resource rate per weighted average daily membership" which is used to determine the distribution of Second-Tier equalization funding, incorporates the weighted average daily membership of the "previous year." This portion of A.C.A. § 6-20-302, therefore, lends support to the Department's conclusion that current year enrollment data is not to be considered in calculating Second-Tier equalization funding, but rather, is to be calculated based upon the local resource rate per weighted average daily membership, which is based on "previous year" data.
There is another provision of A.C.A. § 6-20-302, however, which is also relevant to the analysis. As you have noted, recent provisions have been added in this statute with regard to "growing school districts." Specifically, the definition of "average daily membership" was amended to provide as follows:
 (1) `Average daily membership' or "ADM" means the total number of days attended plus the total number of days absent by students in grades kindergarten through twelve (K-12) during the first three (3) quarters of each school year, divided by the number of school days actually taught in the district during that period of time. For aid purposes, the average daily membership of growing school districts shall be the average daily membership of the previous year plus the total average daily membership increase for the first three (3) quarters of the current year. The initial aid computation for all districts shall be made using the average daily membership of the previous year. At the end of the first quarter, an adjustment shall be made in the aid using the ratio of the previous year's first-quarter average daily membership to the previous year's three-quarter average average daily membership to project the three-quarter average average daily membership for the current year using the first-quarter actual average daily membership of the current year as follows:
 Previous year's first-quarter average daily membership ÷ previous year's three-quarter average average daily membership = current year's first-quarter actual average daily membership ÷ projected three-quarter average average daily membership for the current year.
In my opinion a question of statutory construction is presented by the varying definitions of "local resource rather per weighted average daily membership" (which refers to "previous year" enrollment) and "average daily membership" (which authorizes an adjustment after first quarter enrollment data is received). The more specific provision, (the one pertaining specifically to the distribution of "second-tier" funding), ties the calculation to average daily membership of the previous year. The more general provision, (the one pertaining to aid calculations for growing school districts generally) allows an adjustment after first quarter enrollment data is received. Each of these definitions was amended last by Act 968 of 1993 — that is, the existing definitions were last amended by the same act. Reaching any conclusion as to the legislative intent through application of rules of statutory construction holding the last enactment prevails, therefore, is difficult if not impossible. In addition, it is my understanding that litigation is imminent on this question, and that the school districts have already obtained counsel in the matter. Because my office is charged with the statutory duty to defend state agencies, including the Department of Education, I do not feel it appropriate for this office to issue a conclusive legal opinion on these questions.
An answer to your questions must ultimately be provided through the judicial process.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh